UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 1:25-cr-91-JJM-AEM |
| v. | In Violation of: |
| | 21 U.S.C. §§ 331(a) and 333(a)(1) (introduction of a misbranded drug) |
| MAHR AHMED | |
| Defendant | |

## INFORMATION

The United States Attorney charges that:

At all times relevant to this Information:

1. Defendant MAHR AHMED (AHMED) was a resident of Attleboro, Massachusetts and the President of Noor, Inc.
2. Noor Inc. was registered by the Rhode Island Secretary of State to operate in Rhode Island and was a supplier of general merchandise for distribution to convenience stores in Rhode Island, Massachusetts, Connecticut, New York and New Hampshire.

### Background - FDA

3. The United States Food and Drug Administration (FDA) was the federal agency responsible for protecting the health and safety of the American public by enforcing the Federal Food, Drug and Cosmetic Act (FDCA). 21 U.S.C. §§ 301-399i. One of the main purposes of the FDCA was to ensure that human drugs sold were safe, effective, and bore labeling containing only true and accurate information. The FDA's responsibilities under

the FDCA included regulating the manufacture, labeling, and distribution of drugs shipped or received in interstate commerce.

4. The FDCA defines "interstate commerce" as "(1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or within any other territory not organized with a legislative body." 21 U.S.C. § 321(b).

5. Under the FDCA, a "drug" was defined as, among other things, "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," "articles (other than food) intended to affect the structure or any function of the body of man," and "articles intended for use as a component of" the aforementioned articles. 21 U.S.C. § 321(g)(1)(B), (C) and (D).

6. A "prescription drug" under the FDCA was any drug that, because of its toxicity or other potential for harmful effects, or the method of use, or the collateral measures necessary to its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug, or was limited by an approved application . . . to use under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(l).

7. Under the FDCA, "label" meant "a display of written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). The FDCA defined "labeling "as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

8. Under the FDCA, a drug was deemed misbranded if, among other things, its labeling was false or misleading in any particular. 21 U.S.C. § 352(a).

9. The FDCA prohibits the doing and causing of the following act, among others: introducing or delivering for introduction into interstate commerce any drug that was misbranded. 21 U.S.C. § 331(a).

10. In enforcing the FDCA, the FDA has identified a criminal trend where over-the-counter products, frequently represented as "all natural" or "100% herbal," contain hidden pharmaceutically active ingredients that could be harmful. As a result, consumers who buy such products may unknowingly take products laced with varying quantities of active pharmaceutical ingredients of FDA-approved drugs, controlled substances, and/or untested and unstudied pharmaceutically active ingredients that may lead to health complications. This trend has been identified commonly in products promoted for, among other things, male sexual performance enhancement.

**Sildenafil Citrate**

11. At all times relevant and material herein, sildenafil citrate was the active pharmaceutical ingredient in prescription drugs approved by the FDA for the treatment of erectile dysfunction, including Viagra®.

12. Drugs containing sildenafil citrate are prescription drugs because of its effect on the human body. Sildenafil citrate opens capillaries, which increased the blood flow and heart rate. Clinical trials conducted by pharmaceutical companies and reviewed by the FDA resulted in the posting of possible adverse reaction in all sildenafil citrate product literature. Licensed practitioners are warned by the manufacturer's labeling that person on heart medications and/or blood-thinning medications could suffer heart attack or stroke if they use sildenafil citrate. Distributors of FDA-approved drugs containing sildenafil citrate advise doctors not to prescribe the drugs to any patients with heart

conditions, warning that the effects of sildenafil citrate could cause blood pressure to drop to an unsafe or life-threatening level.

**Defendant's Sale of Misbranded Drugs**

13. From at least January 2019 through July 2023, through Noor, defendant sold products containing sildenafil citrate to convenience stores in Rhode Island, Massachusetts, Connecticut, New York and New Hampshire.

14. Defendant sold products labeled, JMY (Just Me and You), Rhino, Magnum, Super Panther, XXXPlosion, and Gold Lion all of which were marketed as "100% natural" male sexual performance enhancement supplements. The labels of JMY included the phrases "male enhancement" and "unleash the bull." The label of JMY products claimed that the products contained, among other things, Ginseng, wild yam, saw palmetto, white willow bark, and ashwagandha.

15. In reality, JMY, as well as Rhino, Magnum, Super Panther, XXXPlosion, and Gold Lion contained sildenafil citrate. Sildenafil citrate was not listed as an ingredient on the label or in any of the labeling of JMY or other products.

16. Defendant purchased JMY from Individual A who ordered and received FDA unapproved sildenafil citrate from companies in India.

17. JMY and other products sold by defendant were drugs within the meaning of Title 21, United States Code, Section 321(g)(l) in that they were intended to be used to treat erectile dysfunction or to affect the structure of function of the human body.

**COUNT ONE**

**(Introducing Misbranded Drugs Into Interstate Commerce)**

21 U.S.C. §§ 331(a) and 333(a)(1)

18. Paragraphs 1 -17 above are incorporated by reference.

19. From in or about July 2018 through September 2023, in the District of Rhode Island and elsewhere, Defendant

**MAHR AHMED**

did introduce and deliver for introduction into interstate commerce, from Rhode Island to New York, New Hampshire, Connecticut, and Massachusetts, drugs which contained sildenafil citrate among their ingredients despite their labeling failing to disclose sildenafil citrate as an ingredient, that were misbranded within the meaning of Title 21, United States Code, Section 352(a) in that their labeling was false and misleading in any particular.

In violation of Title 21, United States Code, Sections 331(a) and 333(a)(1).

**FORFEITURE ALLEGATION UNDER 21 U.S.C. § 334 & 28 U.S.C. § 2461(c)**

**(Introduction of Misbranded Drugs)**

The allegations contain in this Information are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of certain property in which defendant MAHR AHMED has an interest.

Upon conviction of the offenses alleged in Count One of this Information in violation of 21 U.S.C. § 331(a) and 21 U.S.C. § 333(a)(1) defendant MAHR AHMED shall forfeit to the United States of America, pursuant to 21 U.S.C. § 334, and 28 U.S.C. § 2461(c), any property constituting misbranded drugs.

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property which is $340,200.00, and, in addition, to seek a court order requiring the defendant to return any such property to the jurisdiction of the court for seizure and forfeiture.

All in accordance with 21 U.S.C. § 334 and Rule 32.2(a), Federal Rules of Criminal Procedure; and the procedures set forth at 21 U.S.C. § 853, as made applicable by Title 28 U.S.C. § 2461(c).

SARA MIRON BLOOM
ACTING UNITED STATES ATTORNEY

Stacey Erickson
______________________________
STACEY A. ERICKSON
ASSISTANT UNITED STATES ATTORNEY
DEPUTY CHIEF, CRIMINAL DIVISION

______________________________
DULCE DONOVAN
ASSISTANT UNITED STATES ATTORNEY