UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br>MAHR AHMED,<br>Defendant. | ) | C.A. No. 1:25-cr-00091-AEM |

**MEMORANDUM AND ORDER**

AMY E. MOSES, United States Magistrate Judge.

Before the Court is the Government's Motion for an Order of Forfeiture (Money Judgment) (ECF No. 42). On February 27, 2026, the Court both arraigned and accepted the guilty plea of the defendant, Mr. Ahmed, for introduction of misbranded drugs into interstate commerce in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 331(a) and 333(a)(1), a strict liability misdemeanor offense. *See United States v. Facteau*, 89 F.4th 1, 15 (1st Cir. 2023). That plea was made pursuant to an agreement with the Government under Fed. R. Crim. Pro. 11(c)(1)(B). *See* ECF No. 25. In his plea agreement, Mr. Ahmed, "[p]ursuant to 21 U.S.C. § 334 and 31 U.S.C. § 5317[1] . . . agree[d] to forfeit a sum of money in the amount of $100,000." *Id.* at 3. The Government now asks the Court to enter an Order of Forfeiture (ECF No. 42-2) in that amount. Mr. Ahmed objects, contending that the Government's requested monetary forfeiture is

[1] The Government has since acknowledged that the reference to 31 U.S.C. § 5317 was an error.

not legally authorized.[2] ECF No. 43; *see also* ECF No. 40 at 3–4. For the following reasons, the Court agrees and DENIES the Government's Motion.

## I. Authorization for Forfeiture

Under Federal Rule of Criminal Procedure 32.2(b)(1)(A), "after a plea of guilty . . . is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." If, as here, the Government "seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay." *Id.* This determination "may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. Pro. 32.2(b)(1)(B). "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. Pro. 32.2(b)(2)(A).[3] Taken together, these provisions of Rule 32.2(b) require the Court to determine (1) whether forfeiture is authorized in Mr. Ahmed's case; (2) if so, what property is subject to

---

[2] Mr. Ahmed raises this objection notwithstanding his agreement "to waive all constitutional and statutory challenges in any manner . . . to any forfeiture carried out in accordance with th[e] plea agreement on any grounds[.]" ECF No. 25 at 3.

[3] Further, the Court must conduct a hearing "[i]f the forfeiture is contested, on either party's request[.]" Fed. R. Crim. Pro. 32.2(b)(1)(B). Here, the Court on June 29, 2026 ordered the Government to file a sentencing memorandum explaining, among other things, the statutory authorization for its requested forfeiture and the justification as to the specific amount. The Court then held a hearing on August 6, 2026 for the benefit of the Court. At that hearing, notwithstanding its memorandum's reference to Mr. Ahmed's waiver of any objection to forfeiture, *see* ECF No. 42-1 at 8, the Government did not object to argument by Mr. Ahmed's counsel regarding these issues.

forfeiture; and (3) the amount of money he will be ordered to pay.[4] *See United States v. Chubbuck*, 581 F. Supp. 2d 78, 80 (D. Me. 2008); *United States v. Maldonado-Vargas*, No. 3:16-CR-661-01-JAW, 2022 WL 4291095, at *3 (D.P.R. Sept. 16, 2022) (explaining that "Rule 32.2(b)(1)(A) places an obligation on the court to determine 'the amount of money that the defendant will be ordered to pay'").

The Government contends that criminal forfeiture of $100,000 is authorized here through the interplay of three statutes. *See* ECF No. 42-1 at 8–12. First, under 21 U.S.C. § 334, entitled "Seizure," subsection (a)(1) provides that misbranded drugs are "liable to be proceeded against while in interstate commerce, or at any time thereafter, on libel of information and condemned in any district court of the United States or United States court of a Territory within the jurisdiction of which the article is found." Misbranded drugs that are condemned under this statute may be ordered "disposed of by destruction or sale," or, upon the owner's payment of costs and sufficient bond, be ordered "delivered to the owner thereof to be destroyed or brought into compliance with the provisions of [the FDCA]." *See* § 334(d)(1). The Government contends that this seizure statute authorizes civil forfeiture of misbranded drugs. ECF No. 42-1 at 9.

Because § 334 does not, by its terms, authorize criminal forfeiture of money, the Government next points to 28 U.S.C. § 2461(c), which authorizes criminal forfeiture proceedings against defendants charged with crimes for which "civil [] forfeiture of property is authorized." As the Government explains, "Section 2461(c) permits the United States to seek forfeiture in a

---

[4] In addition, the Court is mindful that it should not impose an illegal sentence. *See United States v. Sevilla-Oyola*, 770 F.3d 1, 10–11 (1st Cir. 2014) (explaining that, at least for the purposes of Federal Rule of Criminal Procedure 35(a), "a sentence is illegal if '[t]he punishment meted out was . . . in excess of that prescribed by relevant statutes") (quoting *Hill v. United States*, 368 U.S. 424, 430 (1962)); *cf. United States v. Rodriguez*, 938 F.2d 319, 322 n.4 (1st Cir. 1991) (noting the reviewability for plain error "of an illegal sentence which contravenes either a statutory minimum or a statutory maximum").

criminal case, even if the underlying criminal statute only authorizes civil forfeiture." ECF No. 42-1 at 9–10 (citing *United States v. Razmilovic*, 419 F.3d 134, 136 (2d Cir. 2005)). Section 2461(c) specifies that "[t]he procedures in section 413 of the Controlled Substances Act (21 U.S.C. 853) apply to all stages of a criminal forfeiture proceeding[.]"

Finally, 21 U.S.C. § 853(p)[5] authorizes the forfeiture of substitute property in certain circumstances where the actual property is unavailable "as a result of any act or omission of the defendant," for example, where the property "has been transferred or sold to . . . a third party." 21 U.S.C. § 853(p)(1)(B). If the actual property is unavailable pursuant to subparagraphs (A) through (E), then the government may seek "the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E)[.]" 21 U.S.C. § 853(p)(2).

Taking these three statutes together, the Government proposes that: (1) 21 U.S.C. § 334 authorizes civil forfeiture for Mr. Ahmed's FDCA violation; (2) 28 U.S.C. § 2461(c) authorizes the use of the criminal forfeiture procedures provided in 21 U.S.C. § 853 here in this criminal case because civil forfeiture is authorized for the FDCA violation; and (3) 21 U.S.C. § 853(p) is a criminal forfeiture procedure that permits the forfeiture of substitute assets where otherwise forfeitable property is unavailable due to an act or omission of the defendant. ECF No. 42-1 at 11–12. The Government thus argues that because Mr. Ahmed has sold some unspecified quantity

[5] Section 853(p) applies to "any property described in subsection (a)," and subsection (a) describes property related to felony violations of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq*. Mr. Ahmed argues that because he has not pled guilty to a felony, he "is not subject to forfeiture and a sentence imposing forfeiture would be illegal." ECF No. 40 at 4. The Government contends that subsection (p) is applicable here where the crime is a misdemeanor because subsection (a) "is the substantive forfeiture statute for CSA offenses[,]" but where forfeiture for another crime is authorized, "[o]nly the *procedures* in Section 853(b)-(q) apply." ECF No. 42-1 at 10. Courts generally have agreed with the Government's position on this issue. *See, e.g.*, *United States v. Alamoudi*, 452 F.3d 310, 313-14 (4th Cir. 2006); *United States v. Awad*, 598 F.3d 76, 78–79 (2d Cir. 2010).

of misbranded drugs, rendering them no longer available, the Government is entitled to forfeit $100,000 from Mr. Ahmed.[6] *Id.* To bolster its argument that such forfeiture is appropriate, the Government submits several examples of other cases where district courts have entered forfeiture orders pursuant to plea agreements for FDCA violations, none of which contains any analysis of whether 21 U.S.C. § 334 is a civil forfeiture statute. *See* ECF No. 42-4.

Focusing on the first statute in the Government's three-statute argument, the Court is unconvinced that 21 U.S.C. § 334 is a civil forfeiture statute. The only federal court that appears to have analyzed this issue is the Second Circuit in *United States v. Fishman*, where it held that "21 U.S.C. § 334 is not a civil forfeiture statute within the meaning of [28 U.S.C.] § 2461(c)." 157 F.4th 143, 172 (2d Cir. 2025).[7] One of the defendants in *Fishman* was found guilty of two counts of conspiracy to violate 21 U.S.C. §§ 331 and 333(a)(2), for which the district court imposed $10,312,627.40 in forfeiture based on the same legal theory the Government proposes here. *Id.* at 153, 168–69. The Second Circuit vacated that forfeiture order, explaining that civil forfeiture statutes are typically intended to enable the "disgorgement of the fruits of illegal conduct" to penalize unlawful conduct to render it unprofitable, and to "compensate the government's investigation and enforcement expenditures[.]" *Id.* (internal quotation marks omitted). The *Fishman* court noted the FDCA, by contrast, permits both the destruction of condemned goods and an owner's retention of those goods after bringing them into regulatory compliance. *Id.* at 171. It concluded that because these remedies are so dissimilar from those traditionally associated with

[6] Rationales for the $100,000 amount are discussed below.

[7] The Government acknowledged during the hearing on forfeiture that it is not aware of any other court expressly deciding whether substitute asset forfeiture is available for violations of 21 U.S.C. § 331.

civil forfeiture, 21 U.S.C. § 334 is not a civil forfeiture statute within the meaning of 28 U.S.C. § 2461(c), and therefore the substitute assets provisions of 21 U.S.C. § 853(p) are unavailable. *Id.*

The Court finds *Fishman*'s analysis sound and is unpersuaded by the Government to find otherwise.[8]

**II. Amount of Forfeiture**

Even if the Court were to find that forfeiture was authorized for Mr. Ahmed's introduction of misbranded drugs into interstate commerce, it would deny the Government's request for an Order of Forfeiture in the amount of $100,000 based on its inconsistent and contradictory justifications as to why that amount is forfeitable.

While it is true that "calculating forfeiture is hardly 'an exact science'—even in the best of circumstances," *United States v. Ponzo*, 171 F.4th 507, 518 (1st Cir. 2026) (quoting *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011)), substitute asset forfeiture under 21 U.S.C. § 853(p) is only available in an amount equal to the value of property that the Government proves, by the preponderance of the evidence, is criminally forfeitable but unavailable due to the defendant's own actions. *See United States v. Rogers*, 102 F.3d 641, 647–48 (1st Cir. 1998) (applying the preponderance standard to forfeiture issues under 21 U.S.C. § 853); *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) (finding an affidavit by the Government as to its efforts to locate forfeitable property sufficient to satisfy the requirements of § 853(p)). This would not

---

[8] In *Fishman*, the Second Circuit noted the troubling implications of the Government's interpretation of the statutory framework: because the misdemeanor provision of 21 U.S.C. § 333(a) creates a strict liability offense, "if the government is right, then a manufacturer who has inadvertently sold drugs or other articles regulated under the FDCA with noncompliant but relatively benign labeling would be subject to the disgorgement of all proceeds from the sale of the drugs." 157 F.4th at 172. The Court agrees that it is unlikely that "Congress contemplated such a remedy" for misdemeanor FDCA violations like those to which Mr. Ahmed has pled guilty. *See id.*

include the value of any drugs currently in the Government's possession; instead, it would presumably be equal to the fair market value of those misbranded drugs that Mr. Ahmed sold. *Cf. United States v. Stoupis*, 530 F.3d 82, 85–86 (1st Cir. 2008) (calculating value of stolen goods based on their fair market value).

In the Government's memorandum, it explains that Mr. Ahmed purchased "JMY," a particular type of the misbranded drugs, from his supplier at a price of $1.35 per packet, or $33.75 for each box of 25 packets. ECF No. 42-1 at 5.[9] The Government contends that Mr. Ahmed sold these boxes to customers for $32 each, or—if a customer purchased them in bulk—$29 per box. *Id.* These figures, if true, would indicate that Mr. Ahmed was losing money on every sale. When asked about these figures at the hearing, the Government's counsel acknowledged that they would result in a loss to Mr. Ahmed. After consulting with an agent, the Government's counsel explained that those figures were incorrect and that Mr. Ahmed instead sold the boxes for $50 each.

The Government originally sought to criminally forfeit $340,200 from Mr. Ahmed. ECF No. 42-1 at 6. This figure was based on evidence indicating that Mr. Ahmed paid his supplier $34,222.50 in checks for the JMY, which Mr. Ahmed stated represented only ten percent of these transactions, with the remaining ninety percent of transactions made in cash. *Id.* Thus, the Government estimated that Mr. Ahmed paid his supplier a total of $342,225 for the JMY and based its initial forfeiture demand on this amount. *Id.* However, this figure cannot serve as the basis for substitute asset forfeiture because it does not appear to take into consideration the value of the JMY that was among the 22,710 misbranded pills seized by the Government, which would

[9] At the hearing on its Motion, the Government explained each packet contained one JMY pill, and that the amount it seeks to forfeit from Mr. Ahmed is specifically based on the JMY pills and not on other misbranded drugs found in his possession.

necessarily not be property that is unavailable "as a result of any act or omission of the defendant" as required by 21 U.S.C. § 853(p). *See id.* at 4, 6.

As for the $100,000 that the Government now seeks, the Government's memorandum explains that figure is based on the amount that Mr. Ahmed received from his sales of the JMY. ECF No. 42-1 at 5–6. Specifically, according to the Government, evidence obtained from Mr. Ahmed's accounting software indicated he received $32,199 in payments for the drugs. *Id.* at 5. Mr. Ahmed informed investigators that this figure represented approximately forty percent of his sales and that the remainder involved cash transactions. *Id.* The Government thus estimated that he received $80,497.50 for sales of the misbranded drugs. *Id.* According to the Government, the $100,000 it seeks is "slightly higher" than $80,497.50, the value of the sold JMY. *Id.* at 6. But the Government has not explained how the Court can legally order monetary forfeiture exceeding the value of the drugs that it proposes Mr. Ahmed sold. *See* 21 U.S.C. § 853(p)(2) ("the court shall order the forfeiture . . . *up to the value of any property* described in subparagraphs (A) through (E) of paragraph (1)" (emphasis added)).

At the hearing on its motion, the Government confused matters by representing that the $100,000 amount is based on the transactions between Mr. Ahmed and his supplier, in other words, the price Mr. Ahmed paid for the JMY. Not only does this contradict the Government's memorandum and differ from the $342,225 amount, but if this methodology was used to calculate the $100,000, then, as noted above, it seems to fail to account for the value of the JMY that the Government seized from Mr. Ahmed (for which it cannot obtain substitute asset forfeiture). And at a later point in the hearing, the Government appeared to propose that the specific $80,497.50 figure is somehow *also* based on the amount Mr. Ahmed paid his supplier for the JMY, rather than

what he received from his customers, contradicting the Government's memorandum and further confusing matters.

At another point in the hearing, the Government indicated that the $100,000 was a "negotiated amount" that was reached as part of a "negotiated resolution . . . like a settlement" that was "not supposed to be perfect." This new rationale for the amount has no connection whatsoever to the statutory requirements for the forfeiture of substitute property.

If 21 U.S.C. § 334 is a civil forfeiture statute, then for the Court to order the forfeiture of $100,000, the Government must establish by the preponderance of the evidence that this amount is the value of forfeitable property (i.e., misbranded drugs) that was sold by Mr. Ahmed. Instead of establishing this, the Government has offered three different rationales for the amount. First, the Government contended $100,000 is "slightly higher" than $80,497.50 he received for the JMY in sales; second, it argued that $100,000 (and later $80,497.50) is the amount he paid his supplier for the JMY without accounting for the value of the JMY it seized; and third, the Government disclosed that $100,000 is the "negotiated amount" reached by the parties. The Government's inconsistent justifications for the $100,000 it seeks as substitute asset forfeiture from Mr. Ahmed do not comport with the requirements of 21 U.S.C. § 853(p). Because of the issues described above, the Court finds that the Government has not met its burden of proof as to value of the property for which it seeks substitute asset forfeiture. The Court consequently cannot "determine the amount of money that the defendant will be ordered to pay" as required by Rule 32.2(b)(1)(A) and therefore cannot order the forfeiture of $100,000.

## III. Conclusion

Forfeiture is not authorized against defendants like Mr. Ahmed who introduced misbranded drugs into interstate commerce in violation of 21 U.S.C. §§ 331(a). Even if forfeiture

was authorized, the Government has not established by a preponderance of the evidence that $100,000 is the value of the property that is unavailable due to acts or omissions of Mr. Ahmed. As such, the Court concludes that forfeiture of $100,000 as substitute assets from Mr. Ahmed is not authorized here and therefore DENIES the Government's Motion for an Order of Forfeiture (ECF No. 42).

IT IS SO ORDERED.

/s/ Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

September 9, 2026